**In re Robert Craig STANGER and Cathrine C. Stanger, Debtors.**

**No. 07–40926–JDP.**

United States Bankruptcy Court, D. Idaho.

April 8, 2008.

Jim Spinner, Service, Spinner & Gray, Pocatello, ID, for Trustee R. Sam Hopkins.

Jay A. Kohler, Idaho Falls, ID, for Debtors.

R. Sam Hopkins, Pocatello, ID, Chapter 7 Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### Introduction

In this case, the Court must determine whether, under Idaho law, funds deposited in a health savings account ("HSA") for the debtor's benefit may be exempted.

1. Although Debtors claim the funds are exempt under Idaho Code § 11–604(a), there is no such section in the Idaho Code. In his objection to the exemption Trustee perpetuated the error, by listing the same nonexistent section that the Debtors used in their amended schedule C. However, in his response to that objection, Debtor's counsel corrected the mistake and asserted the account was exempt under Idaho Code § 11–604(1)(a). At the hearing, counsel for both Debtors and Trustee referenced the correct section of the Idaho Code. Despite the error in the pleadings, the Court will analyze whether the HSA is exempt under Idaho Code § 11–604(1)(a).

2. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

3. This Memorandum constitutes the Courts findings of fact and conclusions of law. Rule 7052, 9014.

Debtors Robert and Cathrine Stanger claim the entire balance in their HSA exempt pursuant to Idaho Code §§ 11–603(2), (5) and 11–604(a).[1] R. Sam Hopkins, chapter 7[2] bankruptcy trustee ("Trustee"), objected to the claim. On March 11, 2008, the Court conducted a hearing, and following the admission of evidence and testimony, took the issues under advisement. Docket No. 36. Having now carefully considered the record, the arguments of counsel, and the applicable law, this Memorandum disposes of the issue.[3]

### Facts

On October 29, 2007, Robert and Cathrine Stanger filed a joint petition for relief under chapter 7 of the Bankruptcy Code. While they did not list an HSA or claim it exempt in the original schedules filed with their petition, on January 15, 2008, Debtors amended their schedules to list one with a current value of $4,458.03[4], which they claimed as exempt under Idaho Code

4. At trial, Trustee's counsel inquired as to the balance of the account as listed in the amended schedules. Cathrine Stanger testified that the amended schedules reflected the account balance in January 2008, when the schedules were amended. Referring to Ex. 1, which is the monthly statement for the HSA from October 2007, she testified that on the date the petition was filed, the account had a balance of $3,994.37. To be precise, $3,994.37 was the balance in the account at the beginning of the statement period, not on the date the bankruptcy petition was filed. As the statement clearly reflects, two credits and one debit were made to the account during the statement period, but prior to the filing of the petition. The two credits were each in the amount of $140.50 which represent funds withheld from Cathrine Stanger's biweekly paychecks and deposited into the HSA. The debit was for $40.49 which represents a purchase from Eastgate Drug Store. Thus, on the date the bankruptcy petition was filed, the balance in the HSA was actually $4,234.88.

§§ 11–603(2), (5), and 11–604(a).[5] Docket No. 29. Trustee timely objected to Debtor's claim of exemption, asserting that the HSA was not covered by the exemption statutes listed by Debtors. Docket No. 33.

At the hearing on Trustee's objection, Debtor Cathrine Stanger testified she set up the HSA in connection with her employment at Edward Jones. Her establishment of, and contributions to, the HSA are not conditions of her employment. Each year, Ms. Stanger makes an election as to how much money she will contribute from her salary to her HSA, and she determines which medical expenses will be paid from the account. In other words, Ms. Stanger is not required to pay all of her medical expenses with funds from her HSA. Indeed, she could elect to pay for medical expenses from separate funds (or not at all), leaving the money in her HSA to continue to grow, tax free.

Although Ms. Stanger testified that this was a "typical" HSA, at least as far as she knew, it has two distinctive features with respect to her access to the account. First, the account has a prefund option, under which, in some circumstances Edward Jones will advance money into the HSA for eligible medical expenses if the employee's account does not have sufficient funds to cover those expenses.[6]

The second distinctive feature is that the HSA may be accessed via a debit card. Rather than requiring an employee to pay for covered expenses out of a separate account, and then seek reimbursement from the HSA, an employee may instead use a special debit card to pay for eligible expenses. The debit card operates in the same fashion as a regular checking account debit card, but can only be used to pay for eligible medical expenses.

■■■■ Aside from these distinctive features, this account functions much like other HSAs established under the applicable federal tax laws, 26 U.S.C. § 223. Contributions to HSAs are made from wages prior to federal and FICA tax deductions, and in many cases, prior to state and local tax deductions as well.[7] In addition, earnings on deposits, which are invested, accumulate tax free while in the HSA. Money withdrawn by the account holder to pay for eligible medical expenses is also tax free. However, since these accounts are designed specifically for medical expenses, if funds are withdrawn from the account and not used for qualifying medical expenses, that money is subject to income taxes and a 10% penalty if the person is under age 65.[8] Lastly, unlike traditional flexible spending accounts, there is no "use it or lose it" deadline by which to use the funds in the HSA. Money remaining in the account at the end of the year automatically rolls over to the next year.

Ms. Stanger testified that no one else deposits money into the account, however, the documentary exhibits admitted into evidence at the hearing appear to contradict that statement. The HSA brochure furnished to Edward Jones employees explains, "[i]f you contribute to an HSA, the

---

5. *See* Footnote 1 regarding the incorrect citation to the statute.

6. The maximum prefund amount is an employee's annual HSA pledged contribution plus unfunded firm match minus any outstanding prefunded balance and minus an employee's year-to-date HSA contributions. Ex. 1, p. 4.

7. Alabama, California, Maine, New Jersey, and Wisconsin require HSA contributions to be made on an after-tax basis. Ex. 1.

8. After age 65, the funds can be used for any expense with no penalty if income tax is paid on the withdrawal. Cathrine Stanger was 59 years old at the time her bankruptcy petition was filed.

firm will match your contribution dollar-for-dollar, up to $500 if you have single coverage, and up to $1,000 if you have dual or family coverage." Ex. 1, p. 4. Ms. Stanger's pay statement, in the "year-to-date" column, lists $1,000 as an "HSA—Firm Match." Ex. 2. Thus, it appears that at least one other person (or entity) has deposited funds in Debtors' HSA.

## Discussion[9]

### I.

Upon the commencement of a bankruptcy case, all property in which a debtor has a legal or an equitable interest becomes property of the bankruptcy estate. 11 U.S.C. § 541. However, a debtor may exempt certain types of property from administration by the trustee in that case. *In re Katseanes*, 07.4 I.B.C.R. 79, 79 (Bankr.D.Idaho 2007). Under § 522(b)(2), a state may opt-out of the Federal bankruptcy exemption scheme provided in § 522(d). "Idaho has 'opted-out' of the federal bankruptcy exemptions, and its citizens are limited to the exemptions allowed under state law."[10] *In re Lawrence*, 03.3 I.B.C.R. 165,165 (Bankr.D.Idaho 2003).

Trustee, as the objecting party, bears the burden of proving Debtors' claim of exemption is not proper. *Carter v. Anderson (In re Carter)*, 182 F.3d 1027,-1029 n. 3 (9th Cir.1999); *In re Kline*, 350 B.R. 497, 502 (Bankr.D.Idaho 2005); Rule 4003(c). Exemption statutes are to be liberally construed in favor of the debtor. *Dudley v. Anderson (In re Dudley)*, 249 F.3d 1170, 1176 (9th Cir.2001); *In re Steinmetz*, 261 B.R. 32, 33 (Bankr.D.Idaho 2001). "However, the statutory language may not be 'tortured' in the guise of liberal construction." *In re Wiley*, 352 B.R. 716, 718 (Bankr.D.Idaho 2006) (citing *In re Collins*, 97.3 I.B.C.R. 78, 79 (Bankr.D.Idaho 1997)).

In Idaho, as is the general rule," '[s]tatutory interpretation begins with the words of the statute, giving the language its plain, obvious, and rational meanings.'" *In re Lares*, 188 F.3d 1166, 1169 (9th Cir.1999) (quoting *State of Idaho v. Hagerman Water Rights Owners, Inc. (In re SRBA)*, 130 Idaho 727, 947 P.2d 400, 405 (1997)). If a statute is clear and unambiguous, the Court need only apply the statute according to its terms without engaging in statutory interpretation. *Wolfe v. Farm Bureau Ins. Co.*, 128 Idaho 398, 913 P.2d 1168, 1174 (1996). Unless the result of a particular interpretation of a statute is "palpably absurd," it must be assumed that the legislature meant what it stated in the statute. *Rim View Trout Co. v. Higginson*, 121 Idaho 819, 828 P.2d 848, 851 (1992).

Because Debtors have claimed the HSA as exempt under three distinct provisions of the Idaho Code, the Court will discuss the applicability of each section in turn.

### II.

Idaho Code § 11–603(2) provides that an individual is entitled to ex-

---

9. Following the hearing, Debtors amended their schedule C yet again. Docket No. 37. This amendment changes the "current value" of the HSA to $3,994.37 and claims that amount as exempt under the same provisions of the Idaho Code previously listed. (It perpetuates the error with respect to nonexistent Idaho Code § 11–604(a)). In addition, Debtors list a new section, Idaho Code § 11–207, and claim $2,995.78 as exempt under that section. Trustee has not objected to this new amendment, and neither party addressed Idaho Code § 11–207 during their argument at the hearing. The Court expresses no opinion as to the propriety of this amended claim.

10. Although Debtors are limited to the exemptions allowed under Idaho law, the federal bankruptcy exemptions do not currently allow funds in a HSA to be exempted from a bankruptcy estate. *See* § 522(d).

empt "health aids reasonably necessary to enable the individual or a dependent to work or to sustain health." Trustee argues that this provision is designed to exempt tangible objects and devices, such as oxygen tanks and prosthetics, not money in a health savings account. Trustee is correct.

As the Court has previously held, "[a]ssigning the language of the statute its plain meaning, a 'health aid' likely refers to a tangible object, such as a wheelchair or a walker, utilized by an individual to sustain his or her health or to enable himself or herself to work." *In re Lawrence,* 03.3 I.B.C.R. at 166. Debtors have not demonstrated how amounts credited to a dedicated savings account qualify as a health aid. Thus, the deposits in Debtor's HSA are not exempt under Idaho Code § 11–603(2).

### III.

Idaho Code § 11–603(5) provides an unlimited exemption for "benefits payable for medical, surgical, or hospital care." Trustee argues that this provision is designed to exempt benefits received by a debtor under a policy of insurance or from public assistance; it should not be so broad as to include a savings account—even an account designed strictly for medical purposes.

Debtors, on the other hand, give the section a much broader read, reminding the Court that exemption statutes are to be liberally construed in their favor. Debtors argue that because the HSA is intended to be used for health care and related expenses, the entire account should be exempt under this section. Alternatively, Debtors argue that because HSAs are designed to supplement health insurance benefits—which are clearly exempt under this statute—the HSA should be exempt as well.

Although there is no Idaho case law defining the scope of this exemption, this Court has previously attempted to discern its limits. *See In re Lawrence,* 03.3 I.B.C.R. at 166. In *Lawrence,* the Court consulted respected dictionaries for guidance in defining the term "benefit:"

One accepted definition of a "benefit" is "a payment given by an insurance company" to reimburse for medical care. *The Random House Dictionary* 79 (Jess Stein ed.,1980). Another respected resource defines a "benefit" as "financial assistance that is received from an employer, insurance, or public program (such as social security) in time of sickness, disability, or unemployment." *Black's Law Dictionary* 151 (7th ed.1999).

*Id.* Based upon its research, the Court concluded that Idaho Code § 11–603(5) was most likely "designed [by the Legislature] to protect monetary health insurance benefits payable to a debtor under a policy of insurance for his or her own medical care or that of his or her dependants, or perhaps under a government assistance program of some kind." *Id.; cf. In re Reeves,* 02.4 I.B.C.R. 183,184 (Bankr.D.Idaho 2002) (exempting benefits payable by the debtor's health insurance company). HSAs are not insurance policies, nor are they governmental assistance programs. Even under a liberal construction of the statute, the Court is not persuaded by Debtors' argument that money she sets aside for medical expenses in a dedicated savings account is equivalent to benefits payable under such a policy or program. Rather, the Court agrees with Trustee that HSAs fall into a gap in the legislation.

The Idaho statute does not reference HSAs. Moreover, as Debtor's counsel correctly acknowledged at the hearing, when Idaho Code § 11–603(5) was enacted

in 1978, HSAs did not even exist. It is therefore doubtful that the Legislature intended this statute to cover such accounts. Indeed, within the last few years, several other states have amended their statutes to specifically exempt HSAs.[11] Idaho has not yet followed suit. This Court can not enact exemption law where none exists; its role is, instead, to determine how the existing law applies in this situation. As currently written, Debtors may not exempt the HSA under Idaho Code § 11–603(5).

## IV.

■ Idaho Code § 11–604(1)(a) provides that an individual is entitled to an exemption to the extent reasonably necessary for the support of him and his dependants for "benefits paid or payable by reason of disability or illness." To the extent that this section parrots the language in Idaho Code § 11–603(5), focusing on "benefits paid or payable," a similar analysis would apply. In addition, it is undisputed that many of the medical expenses eligible for payment from the HSA would not necessarily result from the Debtors' "disability or illness." Thus, Debtor's HSA is also not exempt under Idaho Code § 11–604(1)(a).

## Conclusion

While a policy protecting a debtor's deposits in a qualified HSA from reach by creditors or a trustee in bankruptcy would be laudable, none of the existing Idaho exemption provisions cover such deposits. In particular, HSAs are not exempt under Idaho Code §§ 11–603(2), (5) or 11–604(1)(a) as these provisions are currently written. Thus, a separate order will be entered sustaining Trustee's objection, and disallowing Debtors' claim of exemption on amounts deposited in the HSA as of the date of the filing of the bankruptcy petition.

---

11. The Court's research shows that HSAs are now exempt in at least four states. *See* Texas Property Code § 42.0021(a) ("a person's right to the assets held in or to receive payments ... under any health savings account described by Section 223 of the Internal Revenue Code of 1986, is exempt from attachment, execution, and seizure for the satisfaction of debts...."); Fla. Stat. § 222.22(2) ("Moneys paid into or out of, the assets of, and the income of a health savings account or medical savings account authorized under §§ 220 and 223 of the Internal Revenue Code of 1986, as amended, are not liable to attachment, levy, garnishment, or legal process in this state in favor of any creditor of or claimant against any account participant, purchaser, owner or contributor, or account beneficiary."); Tenn.Code § 26–2–105(b) ("any interest of any participant or beneficiary in ... a Health Savings Account qualified under § 223 of the Internal Revenue Code of 1986, as amended, are exempt from any and all claims of creditors of the participant or beneficiary, except the state of Tennessee."); Miss.Code § 85–3–1 ("There shall be exempt from seizure under execution or attachment: ... (f) The assets of a health savings account, including any interest accrued thereon....").